UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JOSEPH KEITH KINSER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:13-CV-264-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Joseph Keith Kinser seeks judicial review of a decision of the Commissioner of Social Security denying his applications for supplemental security income and disability insurance benefits. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. Kinser did not consent to the jurisdiction of the Magistrate Judge. In accordance with the order of transfer, the undersigned now files this Report and Recommendation.

**I.      Statement of the Case**

On June 6, 2012, Kinser and a vocational expert testified at a hearing before an administrative law judge (ALJ). Kinser was represented by an attorney at the hearing. The ALJ determined on July 26, 2012, that Kinser was not disabled because he could perform past relevant work in the national economy. The Appeals Council denied review on September 20, 2013. Following denial of a request for review, the ALJ's decision becomes the Commissioner's final decision and is properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107, 120 S. Ct.

2080, 147 L. Ed. 2d 80 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding the Commissioner's final decision incorporates the Appeals Council's denial of a claimant's request for review).

## II. Factual Background

Kinser originally claimed that he became disabled on August 27, 2007, at age 55 due to back problems after a motorcycle accident. (Tr. 42–43.) At the hearing before the ALJ, Kinser amended his onset disability date to June 26, 2010. (Tr. 41.) Kinser had a second motorcycle accident on June 26, 2010, which caused a variety of medical issues and exacerbated his back problems. (Tr. 44–49.) Specifically, Kinser incurred a head injury which he claims has led to memory loss, depression, and pain and numbness in his back, hands, and legs that severely limit his ability to work. (Tr. 44–45, 50–54.) He has a college education in deaf ministry; he last worked as a self-employed landscape gardener; and he previously worked as an apprentice plumber, retail meat cutter, and welder. (Tr. 35–36, 55.) He lives with a friend who takes care of many of the household chores. (Tr. 50.)

## III. Standard of Review

A court reviewing the Commissioner's denial of disability insurance benefits is limited to determining (1) whether the decision is supported by substantial evidence in the record and (2) whether the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2014); *see e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Without reweighing the evidence or substituting its own judgment, a reviewing court must examine the entire record,

including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).

## IV.    Discussion

In making a disability determination, the Commissioner conducts a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) whether the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. § 404.1520(a)(4) (2014). If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

At the first four steps in the analysis, the claimant bears the burden of proof. *Id.* Once this burden is satisfied, the Commissioner bears the burden of showing the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

In this case, the ALJ determined: (1) Kinser was not currently engaged in substantial gainful activity; and (2) Kinser, although he suffered from severe impairments of depression and chronic back pain, did not have an impairment or combination of impairments that met or medically equaled

the severity of one of the listed impairments in Appendix 1. (Tr. 14–15.) Following step three, the ALJ assessed Kinser's residual functional capacity (RFC) and found that he had the RFC to perform medium work, although without the capacity to understand, remember, and carry out complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings. (Tr. 18.) At the hearing before the ALJ, the vocational expert testified that Kinser would be able to perform his past relevant work as a welder, which is classified as medium work. (Tr. 55–58.) At step four the ALJ found that Kinser could return to past relevant work as a welder or other medium-level unskilled work such as a cleaner, janitor, or kitchen helper. (Tr. 21.) An ALJ's determination that a claimant can perform past work may be based on descriptions of "past work as actually performed or as generally performed in the national economy." *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

Kinser argues on appeal that the ALJ erred by (1) failing to perform a function-by-function assessment of Kinser's RFC in compliance with Social Security Regulation (SSR) 96-8p; and (2) finding Kinser was not disabled at step four of the five-step sequential evaluation. Pl.'s Br. 17, 21.

### A. The ALJ's RFC assessment that Kinser was capable of performing medium work with certain enumerated restrictions is supported by substantial evidence.

In Kinser's first point of error, he argues that the ALJ erred by failing to perform a function-by-function analysis before determining an exertion level, as recommended in SSR 96-8p and as required in the Fifth Circuit's decision in *Myers v. Apfel*, 238 F.3d 617, 620–21 (5th Cir. 2001). Pl.'s Br. 17–21; Pl.'s Reply Br. 2–4. He contends that had the ALJ done so, she would have found Kinser was unable to perform work at a medium exertion level. Pl.'s Br. 21.

SSR 96-8p provides guidance as to the formulation of an RFC. The ruling defines RFC as "what an individual can still do despite his or her impairments." SSR 96-8p, 1996 WL 374184, at

4

*2 (July 2, 1996). Prior to reaching a determination of a claimant's exertional level of work, the ruling directs the ALJ to make an evaluation of the claimant's functional limitations and assess his work-related abilities on a function-by-function basis. *Id.* at *2-3.

Relying on the ruling in SSR 96-8p, the Fifth Circuit in *Myers* held that an ALJ must perform a function-by-function analysis of a claimant's ability to perform sustained work-related activities. *See Myers*, 238 F.3d at 620–21. The Fifth Circuit explained that the ALJ should take into consideration the medical evidence from all of the claimant's treating doctors and present good cause why any such evidence is rejected. *Id.* at 621. The court also explained that although the ALJ should give considerable weight to the medical evidence of the claimant's treating physician, such evidence is not conclusive. *Id.*

Kinser's argument that the ALJ failed to perform a function-by-function analysis in her decision, in accordance with SSR 96-8p and *Myer*, requiring reversal or remand must be rejected for several reasons. First, the ALJ based her assessment, in part, on the state agency medical consultant's function-by-function analysis of Kinser's physical exertional limitations. (Tr. 19–20.) The state consultant, Dr. Frank Flory, M.D., examined Kinser and reported that he found "no evidence of disability to do work activities such as stand, sit, move about, lift, carry, and handle objects other than mild to moderate pain." (Tr. 400.) Dr. Flory also observed that Kinser had a good range of motion in all of his extremities, and he was able to walk on his heels and toes without problem. (Tr. 399.) In her decision, the ALJ reiterated Dr. Flory's findings, which included an exertional capacity assessment, and explained that she gave great weight to his assessment. (Tr. 19–20.) State agency physicians "are experts in the Social Security disability programs"; the ALJ properly relied on Dr. Flory's report. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

5

Accordingly, the ALJ complied with the legal standard set forth in *Myers* and SSR 96-8p in determining Kinser's RFC and was not required to repeat the analysis. *Onishea v. Barnhart*, 116 Fed. App'x 1, 2 (5th Cir. 2004) (holding that an ALJ's RFC determination based in part on a state examiner's medical report satisfies the legal standard in *Myers* and SSR 96-8p); *Clark v. Astrue*, No. 3-10-CV-1946-BD, 2011 WL 4000872, at *3 (N.D. Tex. Sept. 8, 2011) (holding that a function-by-function RFC assessment performed by a state medical consultant constitutes substantial evidence).

Second, the ALJ also based her decision in part on the medical reports of Dr. Craig Barker, M.D., which primarily contain evaluations of Kinser's back problems and associated pain. (Tr. 16.) Dr. Barker—Kinser's treating physician on and off beginning in 2009—consistently noted that Kinser was reporting back pain. Dr. Barker also discussed pain management with Kinser, including the use of pain medication. (Tr. 380–85.) As the ALJ noted, Dr. Barker stated in April 2012 that Kinser was taking one pain pill per day, but some days Kinser did not need to take pain medication at all. (Tr. 430.) A medical condition reasonably remedied with prescribed treatment is not considered disabling. *See Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). Consistent with the Fifth Circuit's holding in *Myers*, the ALJ gave weight to the reports of Kinser's treating physician, which constitute substantial evidence. *See Myers*, 238 F.3d at 621.

Finally, Kinser argues that the ALJ relied on inaccurate information in reaching her decision and made conclusory statements regarding Kinser's symptoms. Pl.'s Br. 20; Pl.'s Reply Br. 1–2. However, the ALJ is not required to consider limitations that are contradicted by other testimony or records. *See Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). The ALJ here considered those limitations that are supported by the medical evidence of record. The ALJ acknowledged Kinser's testimony regarding his chronic back pain and history of back problems. (Tr. 19–20.) He further

acknowledged Kinser's testimony that he experiences pain with heavy lifting and is incapable of performing any work due to his back pain. (Tr. 19–21.) But after careful consideration of the evidence, the ALJ found that Kinser's statements regarding the intensity, persistence, and limiting effects of his symptoms were not wholly credible when viewed in light of the objective medical evidence. (Tr. 19.) *See* SSR 96-7p, 1996 WL 374186, at *2 ("whenever the individual's statements . . . [regarding his] symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"); 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

In sum, the ALJ considered all of the medical evidence—including the medical records, Drs. Flory's and Barker's evaluations, and Kinser's subjective complaints—in determining Kinser's RFC and limiting him to medium work. (Tr. 18–21.) In determining that Kinser was capable of performing medium work, the ALJ accounted for his chronic back pain and found the objective medical evidence warranted no further limitations. *See Morris v. Brown*, 864 F.2d 333, 336 (5th Cir. 1988). An "ALJ's findings regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). Accordingly, substantial evidence supports the ALJ's decision that the objective medical evidence, together with Kinser's subjective complaints, does not warrant limitations other than those specified in the RFC assessment, and the ALJ complied with the requirements of SSR 96-8p. *See Williams v. Astrue*, Civil Action No. 3:07–CV–0965–N (BH), 2008 WL 4490792, *11 (N.D. Tex. Oct. 3, 2008) ("Although SSR 96–8p requires a function-by-function analysis, if the record reflects the ALJ applied the appropriate standard and considered all the evidence in the record, there is no error."). Therefore, remand is not required on this point.

**B.     The hypothetical questions the ALJ posed to the vocational expert were proper.**

In Kinser's second point of error, he argues that the ALJ erred by finding that Kinser was disabled at step four of the five step process. Pl.'s Br. 21; Pl.'s Reply Br. 5–7. He contends that had the ALJ properly posed hypothetical questions to the vocational expert (VE), the ALJ would have found that Kinser could not perform work at a medium level. Pl.'s Br. 25.

In the Fifth Circuit, the test as to whether an ALJ's hypothetical question will produce reversible error is as follows:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions . . . a determination of non-disability based on such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *see also Vaught v. Astrue*, 271 Fed. App'x 452, 455 (5th Cir. 2008) (citing the *Bowling* standard affirmatively).

Here, Kinser complains that the ALJ did not consider his specific physical impairments when posing hypothetical questions to the VE. Pl.'s Br. 22, 24. In the hypothetical question, the ALJ included Kinser's age, education, and work experience and said that he could perform medium work and that he should avoid jobs that require complex instructions. (Tr. 56–58.) And the ALJ considered Kinser's testimony and the medical records in determining his RFC. *See Reynaud v. Astrue*, 226 Fed. App'x 401, 404 (5th Cir. 2007) (holding that ALJ did not commit error when ALJ considered claimant's testimony and medical records to determine RFC, which was then included in hypothetical question). As previously discussed, substantial evidence supports the ALJ's RFC assessment. Accordingly, the ALJ properly considered Kinser's RFC and incorporated Kinser's

physical and mental limitations in the hypothetical question. *See Weimer v. Astrue*, 284 Fed. App'x 129, 135 (5th Cir. 2008); *Reynaud*, 226 Fed. App'x at 404.

In response to the ALJ's hypothetical questions, the VE responded by stating that someone with Kinser's limitations could perform welding work—work that Kinser had done previously—as well as cleaning and janitorial work, or work as a kitchen helper, and those jobs were available in significant numbers. (Tr. 56–57.) Kinser's attorney was given the opportunity to correct any purported defects in the ALJ's hypothetical questions. (Tr. 58.); *Wise v. Barnhart*, 101 Fed. App'x 950, 951 (5th Cir. 2004) ("Thus, even assuming, arguendo, that the administrative law judge's hypothetical was deficient in the respects urged on appeal, because [claimant's] representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error."). In sum, the hypothetical questions were proper and do not constitute reversible error. *See Bowling*, 36 F.3d at 436.

Finally, Kinser also points out that he does not have any training or certification in welding; therefore, he does not meet the requirements to work as a welder as the VE testified. Pl.'s Br. 23–24; Pl.'s Reply Br. 8. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Brown*, 805 F.2d 1168, 1170 (5th Cir. 1986)). When Kinser filed for disability benefits, he reported having previously worked as a welder, and Kinser testified at the hearing that he previously worked as welder, which the VE noted. (Tr. 37, 145, 155.) After reviewing Kinser's files, the VE determined that Kinser could return to his work as welder. "Thus, the vocational expert relied on his expertise to arrive at the conclusions that he gave to the ALJ, and he explained how he arrived at his conclusions." *Vaughan*, 58 F.3d at 132 (citing *Fields*, 805 F.2d at 1170). On this

point, there is no reversible error.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Kinser's Complaint with prejudice.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1) (2014); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   October 28, 2014.

NANCY M. KOENIG
United States Magistrate Judge